# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FEDERAL TRADE COMMISSION and
STATE OF FLORIDA, OFFICE OF THE
ATTORNEY GENERAL,

Plaintiffs,

-vs-                                                Case No.  6:12-cv-986-Orl-28KRS

INFORMATION MANAGEMENT
FORUM, INC., d/b/a Vacation Property
Marketing and Vacation Property
Marketing Inc. and EDWARD LEE
WINDSOR, individually, and as an officer of
Information Management Forum, Inc.,

Defendants.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **[PLAINTIFFS'] RENEWED JOINT MOTION . . . FOR A JUDGMENT AND FINAL ORDER AGAINST DEFENDANTS PURSUANT TO RULE 55(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE** (Doc. No. 44) |
| **FILED:** | **February 27, 2013** |

## I.      BACKGROUND AND PROCEDURAL HISTORY.

Plaintiffs Federal Trade Commission ("FTC") and State of Florida, Office of the Attorney

General ("State") filed a complaint against Defendants Information Management Forum, Inc.

("IMF") and Edward Lee Windsor ("Windsor").  Doc. No. 1.  Plaintiffs alleged that each of the

Defendants violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.

§ 45(a), the rules promulgated pursuant to the Telemarketing and Consumer Fraud and Abuse

Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the Florida Deceptive and

Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204.

On June 28, 2012, the Court entered an *ex parte* Temporary Restraining Order with asset

freeze, the appointment of a receiver, and other equitable relief, and ordered Defendants to show

cause why the Court should not enter a preliminary injunction against them pending a final ruling

on the Complaint.  Doc. No. 8.  Thereafter, Windsor (who is the sole owner and officer of IMF),

for himself and on behalf of IMF, agreed to the entry of a preliminary injunction against the

Defendants.  Doc. No. 12.[1]  The Court then entered a preliminary injunction.  Doc. No. 17.

The complaint was served on both IMF and Windsor, Doc. Nos. 10-11, but neither

Defendant answered or responded to the complaint.  On August 20, 2012, the Court granted

Plaintiffs' motion for entry of a clerk's default against the Defendants.  Doc. No. 34.  On August

21, 2012, the Clerk of Court entered defaults against both IMF and Windsor.  Doc. No. 35.

On October 19, 2012, Plaintiffs filed a motion for default judgment against Defendants.

Doc. No. 42.  On February 1, 2013, I denied that motion without prejudice.  Doc. No. 43.  I

instructed Plaintiffs to correct several deficiencies and address several issues in a renewed motion.

I also instructed Plaintiffs to limit their renewed motion to questions of liability and not to address

issues related to damages or remedies.  I informed Plaintiffs that, in the event the Court

---

[1]In so doing, Windsor informed the Court that IMF would not retain corporate counsel, would not present a
defense, and would permit a default to be entered against it.  Doc. No. 12 at 1.

determined that Defendants were liable for some or all of the claims alleged in the complaint, they would be allowed to submit a motion or attend a hearing addressing those issues.

On February 27, 2013, Plaintiffs filed their renewed motion for default judgment.  Doc. No. 44.  The motion was served on both Defendants, but neither filed a response.  Accordingly, Plaintiffs' renewed motion for default judgment is ripe for decision.

## II.    FACTS ALLEGED IN THE COMPLAINT.

IMF is a Florida corporation with a registered address in Orlando.  Doc. No. 1 ¶ 8.  IMF transacts or has transacted business in the Middle District of Florida and throughout the United States.  *Id.*  Windsor is an owner, officer, or manager of IMF.  *Id.* ¶ 9.  At all times material to the complaint, acting alone or in concert with others, Windsor formulated, directed, controlled, had the authority to control, or participated in, the acts and practices of IMF, including the acts and practices set forth in the complaint.  *Id.*  Windsor resides in the Middle District of Florida and, in connection with the matters alleged in the complaint, transacts or has transacted business in the Middle District of Florida and throughout the United States.  *Id.*

Since at least 2010, Defendants have engaged in a plan, program, or campaign to deceptively advertise, market, promote, offer for sale, or sell timeshare rental or resale services through interstate telephone calls to consumers throughout the United States.  Doc. No. 1 ¶ 11.  Either directly or through their agents, Defendants contact consumers who own timeshare properties through unsolicited telemarketing calls.  *Id.* ¶ 12.

In these telemarketing calls, Defendants tell consumers that they have renters or buyers for the consumers' timeshare properties and that those renters or buyers are willing to pay a specific dollar amount for the consumers' timeshare properties.  Doc. No. 1 ¶¶ 13, 16-18.  Defendants tell

consumers that they can rent or sell the consumers' timeshare properties in a very short period of time. *Id.* ¶¶ 13, 20. Defendants inform consumers that they must pay a registration fee, generally ranging from $500 to $2,000, to take advantage of Defendants' timeshare rental or resale services. *Id.* ¶¶ 14, 21. Defendants guarantee consumers that they will receive this money back if Defendants fail to rent or sell the consumers' timeshares as promised or if the consumers make a request for their money back within a set period of time. *Id.* ¶¶ 14, 23. Defendants also assure consumers that they will quickly recover the registration fee through proceeds received from the sale or rental of the consumers' timeshare properties. *Id.* ¶ 24. Defendants make these statements to induce consumers to pay for goods or services. *Id.* ¶ 47.

In truth, Defendants do not have renters or buyers who will pay a specified price for the consumers' timeshare properties. Doc. No. 1 ¶¶ 33, 40(A), 47(A), 51(A). Consumers' properties are not rented or sold within a short period of time or for a good price. *Id.* ¶ 33. Indeed, they are not rented or sold at all. *Id.* Consumers do not receive any rental or sale proceeds from their timeshare properties. *Id.* In many instances, consumers do not receive a refund of their registration fee when a rental or sale fails to occur or when they request a refund within the set period of time set forth by Defendants. *Id.* ¶¶ 33-36, 40(B)-(C), 51(B)-(C).

## III.   APPLICABLE LAW.

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Thus, to support an entry of default judgment, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).

## IV.     ANALYSIS.

A default judgment is appropriate "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit.  Fed. R. Civ.

P. 55(a).  Defendants failed to participate in this case, despite the fact that they were provided with

notice of it in July 2012.  Doc. Nos. 10-11.  Therefore, so long as Plaintiffs' factual allegations

support each element of their claims, a default judgment is appropriate.  I discuss each of

Plaintiffs' claims separately, below.

### A.    *Claims Against IMF.*

#### 1.    Section 5 of the FTC Act.

The FTC seeks an entry of default judgment against IMF for violations of Section 5 of the

FTC Act.

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting

commerce."  15 U.S.C. § 45(a)(1).  By its default, IMF has admitted that it engaged in a plan,

program, or campaign to market, promote, offer for sale, or sell timeshare rental or resale services

through interstate telephone calls to consumers throughout the United States.  Doc. No. 1 ¶11.

IMF also admits that it used e-mail and the internet to conduct its timeshare business.  *Id.* ¶¶ 30,

36.  This is sufficient to establish that it engaged in acts or practices in or affecting commerce.

To establish that an act or practice violates Section 5, the FTC Act must establish that: (1)

there was a representation; (2) the representation was likely to mislead consumers acting

reasonably under the circumstances; and (3) the misrepresentation was material.  *FTC v. Tashman*,

318 F.3d 1273, 1277 (11th Cir. 2003) (citations omitted).  A representation is material if it is of a kind usually relied upon by a reasonably prudent person.  In addition, express false claims used to induce the purchase of a particular product or service are presumed to be material.  *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999) (citations omitted).

By its default, IMF admits that it made the following representations to consumers: (1) IMF had renters or buyers for the consumers' timeshare properties who would pay a specified price for the property or IMF would quickly rent or sell the consumers' timeshares; (2) IMF would refund the registration fee to consumers if the rental or sale did not take place as promised; and (3) IMF would refund consumers' registration fees if the consumers requested a return of their registration fees within a specified period of time.  Doc. No. 1 ¶ 39.  It also admits that those representations were false.  *Id.* ¶ 40.  Such representations were likely to mislead consumers acting reasonably under the circumstances.  Because the representations were false, they were also presumed to be material.  Accordingly, the FTC has established that IMF is liable for violations of Section 5 of the FTC Act.  *See FTC v. JPM Accelerated Servs., Inc.*, No. 6:09-cv-2012-Orl-28KRS, 2011 WL 679938, at * 2-3 (M.D. Fla. Jan. 25, 2011), *adopted by* 2011 WL 675400 (M.D. Fla. Feb. 16, 2011).

        2.      <u>Telemarketing Sales Rule</u>.

Both the FTC and the State allege that Defendants violated two sections of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. §§ 310.3(a)(2)(iv) and 310.3(a)(4).  I address the FTC's claims first.

The FTC promulgated the TSR to implement the Telemarketing Act.  The TSR provides, in pertinent part, as follows:

It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

\*\*\*

    (2)    Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

\*\*\*

        (iv)    Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies . . . .

    (4)    Making a false or misleading statement to induce any person to pay for goods or services . . . .

16 C.F.R. §§ 310.3(a)(2)(iv), 310.3(a)(4). The TSR defines "telemarketing" to mean "a plan, program, or campaign which is conducted to induce the purchase of goods or services . . . , by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(dd). It defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer . . . ." 16 C.F.R. § 310.3(cc). "Person," in turn, means "any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity." 16 C.F.R. § 310.2(w).

By its default, IMF has admitted that it has engaged in a plan, program, or campaign to advertise, market, promote, offer for sale, or sell timeshare rental or resale services through interstate telephone calls to consumers throughout the United States. Doc. No. 1 ¶ 11. This is sufficient to establish that IMF is a "telemarketer" within the meaning of the TSR. IMF has also admitted that it made false statements to consumers, including misrepresentations about its refund policy, and that those statements were made to induce consumers to pay for goods or services. *Id.*

¶ 47. This is sufficient to establish that IMF has violated sections 310.3(a)(2)(iv) and 310.3(a)(4) of the TSR and is liable to the FTC for those violations.

The State also seeks to pursue an action for violations of the TSR against IMF. The Telemarketing Act provides, in relevant part:

> Whenever an attorney general of any State has reason to believe that the interests of *the residents of that State* have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of this title [which includes the TSR], the State, as parens patriae, may bring a civil action *on behalf of its residents* in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the Commission, to obtain damages, restitution, or other compensation *on behalf of residents of such State*, or to obtain such further and other relief as the court may deem appropriate.

15 U.S.C. § 6103(a) (emphasis added). Under the plain language of the statute, the State can bring an action for violations of the TSR only on behalf of residents of Florida. The complaint in this case does not, however, allege that the State is acting on behalf of Florida residents or that IMF's conduct threatened, affected, or is affecting Florida residents.

Nevertheless, there is evidence in the record that shows that individuals in Florida complained about the Defendants' conduct. The Declaration of Michael S. Liggins, which was docketed as an exhibit to the complaint, states, "More than 500 consumer complaints have been filed against Defendants with the Better Business Bureau of Central Florida ("BBB"); Florida Office of Attorney General ("OAG"); the Florida Department of Agriculture and Consumer Services ("FDACS"); and the FTC's Consumer Sentinel database . . . ." Doc. No. 1-6 ¶ 5. This information is sufficient to show that the State had reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected. While the better

practice would be to allege facts in the complaint sufficient to show that the State has standing[2], the record is sufficient to allow the State to proceed on its claim of violation of the TSR.

As discussed above, the allegations of the complaint are sufficient to establish liability for violation of the TSR.  Therefore, I recommend that the Court find that IMF is liable to the State for violation of the TSR.

3.    FDUTPA.

Finally, the State alleges that IMF has violated FDUTPA.  Section 501.204 of the Florida Statutes provides, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1).  It goes on to provide, "It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006."  Fla. Stat. § 501.204(2).  Conduct that constitutes a "deceptive act or practice" or an "unfair act or practice" under the FTC Act is a violation of FDUTPA.  *FTC v. Alcoholism Cure Corp.*, No. 3:10-cv-266-J-34JBT, 2011 WL 8190540, at *6-7 (M.D. Fla. Dec. 5, 2011) (citing Fla. Stat. §§ 501.202-204).  Section 501.207 allows the Attorney General to bring an action to enforce FDUTPA.

As a threshold matter, I asked Plaintiffs to address the Court's legal basis to exercise supplemental jurisdiction over the State's FDUTPA claim in their renewed motion for default

---

[2]  For example, in the case relied upon by the State, the complaint alleged that "[c]onsumers throughout the United States, ***including those in the State of Tennessee***, have suffered monetary damages as a result of Defendant's unlawful acts or practices."  *Tennessee v. Lexington Law Firms*, No. 3:96-0344, 1997 WL 367409, at *3 (M.D. Tenn. May 14, 1997) (emphasis added).

judgment.  Doc. No. 43 at 3.  Plaintiffs' renewed motion alleges that the same deceptive

telemarketing practices form the basis of both the FDUTPA claim and the claims for violations of

the FTC Act and the Telemarketing Act.  This is sufficient to establish that the Court has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), which provides the district courts with

supplemental jurisdiction over all claims "that are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution."

　　　　As another threshold matter, I asked Plaintiffs to address what nexus is required between

the State of Florida and acts that allegedly violate FDUTPA.  Doc. No. 43 at 3.  Plaintiffs cite to

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney General*, 761 So.2d 1256, 1261

(Fla. 3d Dist. Ct. App. 2000) ("*Millennium*"), for the proposition that the State may bring a

FDUTPA claim "even where those persons affected by the conduct reside outside of the state."

The law in Florida on FDUTPA's applicability to out-of-state consumers is somewhat unclear.

*See, e.g.*, *Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*, 764 So.2d 7, 8 (Fla. 4th Dist.

Ct. App. 1999) (disallowing nationwide discovery in FDUTPA case and noting, "[W]e conclude

that these acts [FDUTPA and the Consumer Collection Practices Act] are for the protection of in-

state consumers from either in-state or out-of-state debt collectors.  Other states can protect their

own residents . . . ."); *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436, 439 (Fla. 4th Dist.

Ct. App. 1999) (affirming certification of nationwide class in FDUTPA action related to port

charges for cruises where defendant's operations were controlled and carried out from Florida and

any overages were kept by defendant in Florida); *Océ Printing Sys. USA, Inc. v. Mailers Data

Servs., Inc.,* 760 So.2d 1037, 1042 (Fla. 2d Dist. Ct. App. 2000) (reversing trial court order

-10-

certifying nationwide class in FDUTPA action and stating, "We agree that only in-state consumers can pursue a valid claim under the Unfair Trade Act."); *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1093-94 (Fla. 4th Dist. Ct. App. 2003) (affirming refusal to certify nationwide class in FDUTPA lawsuit against manufacturer of calcium supplements where injury occurred at point of sale).  However, I am persuaded that, among this varying case law, the facts of *Millennium* are the most analogous to this case and, thus, that the rationale of *Millennium* is applicable to this case.

In *Millennium*, the State brought a FDUTPA action against a Florida corporation.  The State alleged that the corporation sent postcards to consumers around the country (but not to Florida residents) in which it made false or misleading statements about a credit card that the corporation was offering to provide for consumers in exchange for a $129.00 fee.  761 So.2d at 1258-59.  The trial court entered a temporary injunction, and the corporation appealed.  The corporation argued that FDUTPA had no applicability to commercial transactions with non-Florida residents.  *Id.* at 1260.  Florida's Third District Court of Appeal rejected that argument, noting that nothing in the language of FDUTPA confines its provisions or limits the State's enforcement authority to commercial transactions involving only Florida residents.  *Id.* at 1261. Instead, it concluded, FDUTPA applies where the offending conduct occurred within Florida, even where those persons affected by the conduct reside outside of the state.  *Id.* at 1262.

The facts of *Millennium* are analogous to the facts in this case, where IMF, a Florida corporation, directed false and misleading telephone communications to consumers around the country.  Under the rationale of *Millennium*, I recommend that the Court find that Plaintiffs' complaint contains sufficient allegations to establish that FDUTPA applies to the State's claims against IMF.  *See also Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012

WL 1570057, at *6 (S.D. Fla. May 2, 2012) (following rationale of *Millennium* and noting that whether FDUTPA applies requires an inquiry into the court's personal jurisdiction over defendants); *Costa v. Kerzner Int'l Resorts, Inc.*, No. 11-60663-CV-COHN, 2011 WL 2519244, at *3-4 (S.D. Fla. June 23, 2011) (denying motion to dismiss and concluding that Florida law applies to a putative nationwide class action for violations of FDUTPA where defendants were citizens of Florida for diversity purposes and operated a centralized website or reservation call center).

As mentioned above, a violation of FDUTPA includes any "deceptive act or practice" or "unfair act of practice" under the FTC Act.  Plaintiffs have already established that IMF engaged in deceptive or unfair acts or practices that violate the FTC Act.  Accordingly, IMF is also liable for violations of FDUTPA.

        B.      *Claims Against Edward Lee Windsor.*

The FTC argues that Windsor should be held individually liable for violations of Section 5 of the FTC Act and the Telemarketing Sales Rule.  Once corporate liability has been established, an individual defendant may also be held individually liable for such violations if he participated directly in the deceptive practices or acts or possessed the authority to control them.  In addition, the FTC must establish that the individual had some knowledge of the practices.  *FTC v. USA Fin., LLC*, 415 F. App'x 970, 974 (11th Cir. 2011) (citing *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996)).  By his default, Windsor has admitted that he was an owner, officer, or manager of IMF.  Doc. No. 1 ¶ 9.  He has also admitted that he formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in the complaint.  *Id.* In addition, Windsor has admitted his participation in – and thus his knowledge of – IMF's false and misleading telemarketing activities by his admission of the allegations of the complaint that

-12-

describe the conduct of both Defendants. *See, e.g.*, *Id.* ¶¶ 11 ("Defendants have engaged in a plan, program, or campaign to deceptively advertise, market, promote, offer for sale, or sell timeshare rental or resale services through interstate telephone calls to consumers throughout the United States"), 39-40 (listing false representations made by Defendants).  This is sufficient to establish Windsor's individual liability to the FTC and the State for violations of Section 5 of the FTC Act and the Telemarketing Sales Rule.

The State also argues that Windsor should be held individually liable for violations of FDUTPA.  In order to proceed against an individual for a violation of FDUTPA, a plaintiff must allege that the individual was a direct participant in the dealings.  *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1074 (Fla. 5th Dist. Ct. App. 2008) (collecting cases).  As mentioned above, by his default, Windsor has admitted his participation in IMF's false and misleading telemarketing activities by his admission of the allegations of the complaint that describe the conduct of both Defendants.  *See, e.g.*, *Id.* ¶¶ 11 ("Defendants have engaged in a plan, program, or campaign to deceptively advertise, market, promote, offer for sale, or sell timeshare rental or resale services through interstate telephone calls to consumers throughout the United States"), 39-40 (listing false representations made by Defendants).  This is sufficient to establish Windsor's individual liability for violations of FDUTPA.

V.      **RECOMMENDATION.**

Accordingly, I **RESPECTFULLY RECOMMEND** that the Court:

(1)      **GRANT** Plaintiffs' renewed motion for default judgment against Defendants;

(2)      **FIND** IMF and Windsor liable to the FTC for violations of Section 5 of the FTC Act and the Telemarketing Sales Rule, as stated in Counts I and II of Plaintiffs' complaint;

(3)      **FIND** IMF and Windsor liable to the State for violations of the Telemarketing Sales Act Rule and FDUTPA, as stated in Counts II and III of Plaintiffs' complaint; and

(4)      **ALLOW** Plaintiffs a reasonable period of time to file a motion, memorandum of law, and evidence in support of the remedies they request in this case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 4, 2013.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy