**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**FEDERAL TRADE COMMISSION, and
STATE OF FLORIDA, OFFICE OF THE
ATTORNEY GENERAL,**

                **Plaintiffs,**

**-vs-**                                                    **Case No. 6:12-cv-986-Orl-31KRS**

**INFORMATION MANAGEMENT
FORUM, INC., d/b/a Vacation Property
Marketing and Vacation Property
Marketing Inc., and EDWARD LEE
WINDSOR, individually, and as an officer of
Information Management Forum, Inc.,**

                **Defendants.**
_____

**REPORT AND RECOMMENDATION
(And Direction to Clerk of Court)**

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **RECEIVER'S SECOND INTERIM APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES (Doc. No. 52)**
>
> **FILED:**      **September 26, 2013**

**I.   BACKGROUND.**

      On June 28, 2012, Plaintiffs, the Federal Trade Commission ("FTC") and the State of Florida, Office of the Attorney General ("State"), filed a complaint for a permanent injunction and other

equitable relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. The complaint alleged that Defendants Information Management Forum, Inc. ("IMF") and Edward Lee Windsor violated Section 5(a) of the FTC Act, the Telemarketing Sales Rule (16 C.F.R. Part 310), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), in connection with the marketing and sale of time share rental and resale services through telephone calls to consumers throughout the United States. Doc. No. 1.

On June 28, 2012, the Court entered an *ex parte* Temporary Restraining Order ("TRO") with asset freeze, the appointment of a receiver, and other equitable relief. Doc. No. 8. As part of that TRO, the Court appointed Mark J. Bernet ("Receiver") as a temporary receiver for IMF, and authorized the Receiver to undertake a number of actions, including assuming full control of IMF; conserving, holding, and managing all assets of IMF and performing all acts necessary or advisable to preserve the value of those assets, including obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of the assets; managing and administering the business of IMF by performing all incidental acts the Receiver deems to be advisable or necessary; instituting, compromising, adjusting, appearing in, intervening in, or becoming party to such actions that the Receiver deems necessary or advisable; and cooperating with reasonable requests for information or assistance from state or federal law enforcement agencies, including Plaintiffs. *Id.* at 13-17. The TRO provided that the Receiver is entitled to reasonable compensation for the performance of all duties pursuant to this Order and directed the Receiver to file periodic requests for the payment of such compensation. *Id.* at 20.

After the entry of the TRO, Windsor (who is the sole owner and officer of IMF), for himself and on behalf of IMF, agreed to the entry of a preliminary injunction against the Defendants. Doc. No. 12. Based on that agreement, the Court entered a preliminary injunction, which continued Bernet's appointment as Receiver. Doc. No. 17.

On August 22, 2012, the Receiver filed his Agreed First Application for Payment of Fees and Reimbursement of Expenses, requesting the authority to pay himself $31,513.93 (representing $30,841.25 as Receiver's fees for services rendered and $672.68 for reimbursable expenses incurred). Doc. No. 37. In the motion, the Receiver requested to be compensated at a rate of $275.00 per hor for all of his time – that is, both time spent doing administrative work as the Receiver and time spent doing legal work. *Id.* The Court granted that motion. Doc. No. 39.

In the meantime, the Clerk of Court entered defaults against both IMF and Windsor. Doc. No. 35. In addition, on June 28, 2013, the Court granted Plaintiffs' motion for default judgment against IMF and Windsor. Doc. No. 48. On August 30, 2012, the Court entered final judgment against IMF and Windsor, entering a permanent injunction against Defendants and ordering them to pay monetary relief in the amount of $16,956, 567.38. Doc. No. 51. In the final judgment, the Court noted that the monetary relief figure was calculated by the Receiver as part of his Court-appointed duties. *Id.* at 3.

The Receiver has now submitted his Second Interim Application for Payment of Fees and Reimbursement of Expenses. Doc. No. 52. The Receiver seeks authority to pay himself $9,253.75 as Receiver's fees for services rendered between August 11, 2012 and September 20, 2013 ("Fee Period"). In support of his motion, the Receiver filed a copy of an invoice, detailing the time he spent on this matter during the Fee Period and noting that he was providing a "courtesy discount" of $1,223.75. Doc. No. 52-1.

The Receiver represents that counsel for Plaintiffs do not object to his motion. Doc. No. 52. Defendants were not available to discuss the Receiver's requested relief before he filed the motion, but the Receiver served the motion on Defendants. *Id.* at 9. Defendants did not file a response to the Receiver's motion within the allotted time. Accordingly, the Receiver's Second Interim Application for Payment of Fees and Reimbursement of Expenses is ripe for decision.

## II. APPLICABLE LAW.

The Supreme Court has noted that courts of equity have the power to fix the compensation of their own receivers and that the compensation is "usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to [the receiver], and the perplexity and difficulty involved in that management." *Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890). In determining a reasonable fee for a receiver, "[a] basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 486 (S.D. Tex. 1974), *aff'd* 519 F.2d 1087 (5th Cir. 1975) (citation omitted). "Although time is a material factor, the difficulty of the job, the expertise necessary to accomplish it, and the results achieved are far more significant here." *Id.* at 486 (citations omitted).

Many courts begin their analysis with the lodestar approach, which is based on the reasonable hourly rate in the relevant market of the professionals for whom fees are sought and the reasonable number of hours expended. *See, e.g.*, *FTC v. Peoples Credit First, LLC*, Case No. 8:03cv2353T17TBM, 2005 WL 3981599, at *3 and n. 7 (M.D. Fla. April 19, 2006) (citing, among other authorities, *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also SEC v. Goren*, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003). Claims for professional services must

be supported by evidence that the hourly rate is reasonable and commensurate with rates paid for similar services, and that the time expended was reasonable. *See Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). In addition, the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied when determining the lodestar amount. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla 2002) (citing *Norman*, 836 F.2d at 1303).

"No receivership is intended to generously reward court-appointed officers." *W.L. Moody & Co.*, 374 F. Supp. at 483 (citations omitted). A receiver must exercise proper billing judgment in seeking fees from the receivership estate, and should limit his or her work to that which is reasonable and necessary irrespective of the amount of money in the receivership estate. *See, e.g.*, *Peoples Credit First, LLC*, 2005 WL 3981599, at *3-4 and n. 7. This is particularly true when, as in the present case, the receivership estate will not likely recover sufficient assets to pay full restitution to the victims of Defendants' unlawful telemarketing activities. *SEC v. Aquacell Batteries, Inc.*, Case No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, at *3 (M.D. Fla. Jan. 31, 2008).[1]

## III. ANALYSIS.

### A. Reasonable Hourly Rate.

As he did with his first application for fees, the Receiver seeks to be compensated at a rate of $275.00 for all of his time on his matter – both time spent doing administrative work as the Receiver and time spent doing legal work. Although the Receiver has not submitted outside evidence that this rate is reasonable, I note that the $275.00 per hour figure represents an $85.00 per hour reduction off

---

[1]The Receiver represents that the Receivership Estate is insolvent. Doc. No. 52 at 5.

the Receiver's normal hourly rate for work as an attorney. Doc. No. 52 at 7. The Receiver has also provided a summary of his qualifications, stating that he graduated from law school in 1986, holds an AV rating from Martindale Hubbell as an attorney, and has received numerous receivership appointments in cases from courts in Florida and Illinois. *Id.* at 8. In addition, the Receiver has provided details about the work he performed during the Fee Period, which included complex forensic accounting tasks that were complicated by the refusal of IMF's accountant to cooperate by providing documentation in a usable format. *Id.* at 5, 7. Based on a review of this information and my experience with fee awards in the Central Florida market, it appears that $275.00 per hour is reasonable for the type of work the Receiver performed during the Fee Period. *See, e.g.*, *FTC v. Peoples Credit First, LLC*, Case No. 8:03-cv-2353-Orl-T-TBM (M.D. Fla. 2005) (Doc. No. 57 at 3; Doc. No. 259) (awarding Receiver Bernet his requested reduced hourly rate of $225 per hour for administrative work performed in 2003). In addition, I note that the Court has already awarded the Receiver $275.00 per hour for both administrative and legal work in this case. Doc. No. 39. Accordingly, in the absence of objection, I recommend that the Court find that $275.00 per hour is a reasonable hourly rate for the work performed by the Receiver during the Fee Period.

  *B.* *Reasonable Number of Hours.*

  The Receiver expended 38.1 hours in this matter during the Fee Period. At the request of the FTC, he has agreed to reduce that amount by 4.45 hours, representing the time he incurred in preparing fee applications. Thus, he seeks compensation for 33.65 hours worked during the Fee Period. Doc. No. 52 at 6-7; Doc. No. 52-1. The Receiver submitted a time sheet detailing the work performed during the Fee Period. The Receiver represents that he generally recorded only 90 percent of the time he actually spent working on this matter as the Receiver. Doc. No. 52 at 7.

Review of the Receiver's time sheet shows that he spent the majority of the 33.65 hours engaged in forensic accounting activities, which ultimately provided the calculation of the amount of monetary damages that the Court assessed against Defendants in its final judgment. The Court has already noted that the monetary relief figure was calculated by the Receiver as part of his Court-appointed duties. Doc. No. 51 at 3-4. The remainder of the Receiver's time was spent analyzing potential claims held by the Receivership Estate against third parties and performing other tasks pursuant to his Court-appointed duties. Doc. No. 52-1. Based on my review of the Receiver's time sheet, I recommend that the Court find that the time claimed by the Receiver for the described tasks was reasonable, in the absence of objection.

    *C.*    *Lodestar.*

Based on the recommendation above, the number of hours claimed by the Receiver (33.65) multiplied by his reasonable hourly rate as the Receiver ($275.00) results in a lodestar fee of $9,253.75.

**IV. RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** the Receiver's Second Interim Application for Payment of Fees and Reimbursement of Expenses (Doc. No. 52) and **AUTHORIZE** the Receiver to disburse funds to pay himself $9,253.75 for Receiver fees incurred during the Fee Period.

**The Clerk of Court is directed to mail a copy of this Report and Recommendation to Defendants in care of Edward Lee Windsor at 2432 Bel Air Circle, Kissimmee, FL 34743.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 29, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy